MARGARET PUTMAN, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Action to recover damages alleged to have been caused by the negligence of the defendant — when the defendant is liable therefor, although another cause concurred in producing them.*

Upon the trial of this action, brought by the plaintiff to recover damages to her horse, wagon and harness, alleged to have been caused by the negligence of the defendant, it appeared that the plaintiff's husband was driving the horse from the west, towards the defendant's crossing, upon a public street, where the defendant had in use, upon each side of the crossing, a gate suspended by, and in part formed of, wires extending over and across the street, which gates were raised and lowered by one operation of a crank at the south-east gate post. The plaintiff's husband drove under the westerly gate and started to cross the track, which occupied a space of about eighty feet, but had not reached the easterly gate when the gateman, seeing an engine approaching from the south, began to lower the gates, then stopped and raised them a little, thereby making some noise by which the horse, which was already somewhat restless, was frightened, but passed under the easterly gate and attempted to run away. Witnesses for the plaintiff testified that the easterly gate in descending struck the horse upon the head. The plaintiff's husband tried to hold the horse, but when about ninety feet easterly from the easterly gate the left rein broke. The horse, being pulled suddenly to the right, turned completely around, upsetting and breaking the wagon and running away.

The court refused to charge " that if the proximate cause of the injury to the horse and other property was the breaking of a defective rein the plaintiff could not recover, even though the horse was previously frightened at the railroad crossing," and charged that if the defendant, by the use of the gates above mentioned, " caused the horse to be frightened, and that fright caused the horse to run away, and the rein broke while endeavoring to control the horse, the jury may find that the proximate cause of the injury was the frightening of the horse and not the breaking of the rein."

*Held,* that, as it was to be assumed that the court had already charged the jury that it was necessary to the plaintiff's recovery to show that the fright of the horse was caused by the defendant's negligence, without fault on the part of plaintiff's husband, the case presented by the request was the case of two concurring causes, both equally proximate, for one of which the defendant was to blame and in respect to the other of which the plaintiff was unfortunate but not negligent, and that the request was properly denied. (FISH, J., dissenting.)

*Ring* v. *City of Cohoes* (77 N. Y., 83) followed.

That if the negligence of the defendant was one of the concurring causes, without which the injury would not have happened, then, however bad the condition of the plaintiff's harness, and however much it promoted the injury, it would not defeat the plaintiff's recovery unless it amounted to negligence. (FISH, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict of a jury rendered upon a trial in the Schenectady County Court.

The action was brought to recover for damages to the plaintiff's horse, wagon and harness, alleged to have been caused by the negligence of the defendant. The plaintiff's husband, while driving the horse which was harnessed to the wagon in which he was seated, approached from the west the railroad crossing on State street, Schenectady. The defendant had in use upon each side of such crossing a gate, suspended by and in part formed of wires, extending over and across the street, to which gate was attached a board, with letters painted on it: "Railroad crossing, lookout for the cars." Both gates were raised and lowered by one operation of a crank at the south-east gate post. When the gates were raised the crossing was understood to be safe; when lowered the crossing was closed to vehicles upon the street. Plaintiff's husband drove under the westerly gate. The tracks occupied about eighty feet space. Before he reached the easterly gate the gateman, seeing an engine approaching from the south, began to lower the gates, then stopped and raised them a little. This operation made some noise. The horse, which was already somewhat restless, became frightened, but passed under the easterly gate and attempted to run. Witnesses on the part of the plaintiff testified that the easterly gate in descending struck the horse upon the head. Defendant's witnesses denied this. Plaintiff's husband tried to hold the horse, but when about ninety rods easterly of the easterly gate the left rein broke; the horse was thus suddenly pulled to the right, it turned completely around, upsetting and breaking the wagon and harness; the horse becoming detached from the wagon ran back to the crossing, plunged through the easterly gate, over the crossing and into a basement opening, and was injured. The court charged the jury that there was no evidence that the gate system of signals was not right and proper.

The defendant's counsel requested the court to charge the jury that if the proximate cause of the injury to the horse and other property of the plaintiff was the breaking of a defective rein, the plaintiff cannot recover even though the horse was previously frightened at the railroad crossing. The court declined to so charge, and further stated: I did not say anything to the jury about that

rein.  I think if the defendant, by the use of this applicance, caused the horse to be frightened, and that fright caused the horse to run away, and the rein broke while endeavoring to control the horse, the jury may find that the proximate cause of the injury was the frightening of the horse and not the breaking of the rein.  The counsel for the defendant excepted to the refusal to charge as so requested.

*S. W. Jackson*, for the appellant.

*D. M. Chadsey*, for the respondent.

LANDON, P. J.:

The case does not contain the charge of the court, and we therefore assume that before his refusal to charge as requested and his explanation of that refusal, the judge had instructed the jury that the plaintiff could not recover unless her property was injured by the negligent acts of the defendant in managing the gate, and without any concurring or contributory negligence on the part of the plaintiff's husband.  In view of the previous proper instructions to the jury we are not at liberty to construe the request as presenting the proposition that the breaking of the rein was the sole proximate cause of the injury, for it is qualified by the condition " even though the horse was previously frightened at the railroad crossing." The fright of the horse must be considered such a fright as the judge had already instructed the jury was necessary to the plaintiff's recovery, namely—a fright caused by the negligence of the defendant. The case presented by the request was therefore the case of two concurring causes, both equally proximate, for one of which the defendant was to blame, and for the other the plaintiff, unfortunate but not negligent.  In such case the request was properly refused because the defendant would be liable.  (*Ring* v. *City of Cohoes*, 77 N. Y., 83.)  If the request had been understood as meaning the case in which the breaking of the rein was due to the negligence of the plaintiff, the court would no doubt have promptly charged as requested.

The remarks of the judge in addition to his refusal to charge, must also be construed in the light of his previous proper instructions, and therefore must be understood as meaning the case of the

horse frightened by the negligent use of the appliance. If that negligence was the *causa causans* of all the difficulty immediately following it, the breaking of the rein would be but one of its consequences. Under the evidence the jury might have found that the horse although frightened by the negligence of the defendant, was so far manageable that no injury would have happened but for the breaking of the rein. The jury might have found that the rein was weak or rotten, although no external appearances indicated any defect. The learned counsel probably desired to present such a case by his request. He cites cases from Maine, in which it is held, where injuries of a similar character were occasioned jointly by a defect in a highway for which the defendant was chargeable, and by a defect in the plaintiff's harness, the plaintiff cannot recover notwithstanding he had no knowledge of such defect and was not in fault for not knowing it. (*Moore* v. *Abbot*, 32 Maine, 46; *Coombs* v. *Topsham*, 38 id., 204; *Farrar* v. *Greene*, 32 id., 574.) Such is not the law in this State. If the negligence of the defendant is one of the concurring causes without which the injury would not have happened, then however bad the condition of the plaintiff's harness, and however much it promoted the injury, we do not understand that it defeats her recovery, unless it amounts to negligence. And a party whose harness is defective but of which defect he has no knowledge and is not in fault. for not knowing it, is not legally negligent; for he has neither done a careless act nor omitted to do what reasonable care requires.

The judgment must be affirmed, with costs.

PARKER, J., concurred.

FISH, J. (dissenting):

The accident which caused the damage occurred at the railroad crossing upon the principal business street in the central part of a city. An engine was upon one of the railroad tracks approaching the crossing. It was the duty of the gate tender, in just that crisis, to lower the gates to prevent travelers with teams from driving upon the tracks in front of the approaching engine. If he had failed to do so under the circumstances, it would have been a plain case of negligence, so that if from his failure to do so, any casualty had occurred, the defendant would have been liable in dam-

ages. He then did only his duty. It mattered not that plaintiff's team had got started to cross from the west side. Teams from the east side were to be protected, even if it left plaintiff's horse in an attitude of danger. So no negligence or wrong is chargeable against defendant in consequence of the lowering of the east gate. The plaintiff seemed to think that — because the gates of defendant were open, he was at liberty to drive on and upon the railway tracks, without heed to the danger of the situation; as the defendant maintained gates and the gates were open when he reached the crossing, he was absolved from the exercise of any care or watchfulness against the dangers of approaching trains. In this he was mistaken. The law did not require defendant to maintain such gates, but they were a proper device as an additional protection against the hazards of the crossing, yet it was none the less the duty of plaintiff's driver, as he approached the crossing, to keep a sharp look out, to use both of his eyes and ears to note the chance of an approaching train. ( *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y., 451; *Gorton* v. *Erie R. R. Co.*, 45 id., 660; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 id., 468; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id., 198.) So that when plaintiff's driver drove upon the railroad track, just as a train was approaching, which made it proper for defendant to lower the gates, he got in that situation by his own act, for which he was at least as much at fault as defendant.

Again, the defendant is not liable because the noise of the gates, or because the movement in lowering it, frightened plaintiff's horse. As well might it be held that defendant would be liable if the horse had been frightened at an approaching engine. Many horses are unmanageable in the presence of a railroad train, and much frightened at the noise and appearance of a passing engine. But it cannot be held that because some horses are so frightened, that it is negligent or wrongful for a company to operate its road with steam engines.

The gates were very proper contrivances, maintained solely for the greater protection to the people who had occasion to cross the track. They cannot be managed without some noise; and the vertical movement, as occasion demands, may (to a horse) have a formidable appearance, and yet it is entirely proper to use them. It was not an unlawful act to use the gate in question. The

defendant, then, is not chargeable with negligence because plaintiff's horse was frightened by the movement of the gate.

Although the great preponderance of evidence is against the allegation that the east gate, as lowered, struck the head of the horse, yet that question is not important, because the proof is too clear to admit of a doubt that the east gate was lowered when plaintiff's horse was about midway between the east and west gates, which was a distance of about eighty feet.

The witness Sebastian Putman, the husband of plaintiff, who was driving the horse, states the case as follows: "When I had got about half way through they lowered the gates, and then the horse got frightened with the noise over head, and squatted and then sprang forward." And again: "As the gates were being lowered and the noise was being heard, the horse squatted and sprang forward with all his might. He dodged down when the noise was heard over his head. The board was being lowered in front of him, right over his head, and he jumped. I think it must have been about half way between the two gates when they commenced to lower the gates." This testimony of the man who was driving the horse, and who was biased in favor of plaintiff, probably puts the case as strongly for the plaintiff as the facts will admit. He does not testify that the gate touched the animal as he passed under the east gate; but his testimony is to the effect that when he was about forty feet from the east gate they began to lower the gate; that his horse was frightened at it, sprang forward with such energy that he was unable to hold him, and so passed the east gate. If the gate and the horse came in collision, it was because the horse thrust himself upon it in consequence of the fright caused by the action of the gate; so that all there was of the extraordinary motion of the horse was caused by reason of his being frightened at the motion of the gate; and for that cause the defendant is not liable.

I think the court below ought to have charged the jury, as requested, that the lowering of the gate, to give notice to travelers that an engine was crossing, could not be held to be unlawful or negligent, although plaintiff's horse was on the crossing at the time.

The defendant's counsel also requested the court to charge the jury that if the proximate cause of the injury to the horse, and other property of the plaintiff, was the breaking of a defective rein,

the plaintiff cannot recover, even though the horse was primarily frightened at the railroad crossing. The court declined so to charge, and defendant's counsel excepted. I think the exception was well taken.

If the jury had found, as matter of fact, that the proximate cause of the injury to the horse and other property was the breaking of a defective rein, it would have been equivalent to a finding that the plaintiff's husband, who was driving the horse, was guilty of contributory negligence in driving through a city and across a railroad track, in the presence of danger, with an insufficient or defective rein. The facts would have justified such a verdict.

The horse had crossed the track and passed the gate in safety. If the rein had not broken, there is reason to believe that the animal would have been restrained, and finally curbed, without overturning the wagon or getting loose. The damage came only from the upsetting of the wagon, after one rein had broken, and the horse was thus pulled suddenly around upon the sidewalk where the driver was disabled and the horse got away from him. It was not an answer to the proposition that the witness Putman had testified that the harness was in good condition before the accident, or that the break of the rein was a new one. He also testified that it was a second-hand harness when he bought it; and I think a jury would be fully justified in finding that a rein that for any cause was so weak that it could be broken by the strength of a driver was an insufficient and defective rein to rely upon under such circumstances.

The judgment below should be reversed and case remitted to the County Court; new trial granted, costs to abide event of the action.

Judgment affirmed, with costs.